IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DANIEL SCOTT STRANGE**, | : | Case No. 1:09-CV-00316 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART AND |
| | : | DENYING IN PART PLAINTIFF'S |
| **MARTIN WADE, et al.**, | : | MOTION FOR PARTIAL SUMMARY |
| | : | JUDGMENT |
| Defendants. | : | |

This matter is before the Court on Plaintiff Daniel Scott Strange's motion for partial summary judgment.  (Doc. 22.)  Plaintiff brought this action against Martin Wade ("Wade") and DCHW LLC ("DCHW") (collectively, "Defendants") on behalf of himself and other similarly situated persons employed as wait staff at Defendants' restaurant. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201, *et seq*, and were unjustly enriched by unlawfully using a tip credit against their minimum wage obligations.

Plaintiff moves for partial summary judgment on the following issues:  whether Defendant Wade, in his individual capacity, can be held jointly and severally liable with DCHW for the alleged violations, and whether the tip pooling arrangement in question violates the FLSA.  For the reasons that follow, the Court **GRANTS** Plaintiff's motion as to Wade's liability, and **DENIES** Plaintiff's motion with respect to the FLSA violation.

1

**I.     BACKGROUND**[1]

Jean Robert at Pigall's ("Pigall's" or the "restaurant") was a fine dining restaurant that operated from August 2002 until February 28, 2009 in Cincinnati, Ohio. Pigall's was owned by Defendant DCHW, a limited liability company that was incorporated in 2001 to serve as the operating entity for the restaurant. Jean-Robert de Cavel ("de Cavel") and Defendant Wade were co-owners of DCHW, Wade owning eighty percent and de Cavel owning twenty percent.

**A.     Wade's Involvement in Pigall's**

In addition to owning eighty percent of DCHW, Wade testified that he bankrolled "the entire operation" by providing one hundred percent of the restaurant's financing. (Wade Dep. 20:15-21:1.) When in town, Wade stopped by the restaurant multiple times during the week. He maintained a personal mail slot at the restaurant. He received sales reports from the restaurant on a daily basis and monthly financial statements at his request. Wade regularly met with de Cavel and office manager Melissa Blevins to discuss the restaurant's financial status. Wade prepared and filed the tax returns for Pigall's on an annual basis. Wade was also responsible for determining de Cavel's salary.

**B.     Brown's Responsibilities as Maître d'**

In May of 2002, prior to the scheduled opening of the restaurant, Richard Brown was hired to serve as the restaurant's maître d'. (Wade Dep. 52:8-12; Brown Dep. 20:8.) As maître d', Brown placed advertisements for open positions, selected potential hires for interviews, and

---

[1] Except as otherwise indicated, background facts are taken from Plaintiff's Statement of Proposed Undisputed Facts (doc. 22-2) to the extent they are admitted by Defendants in Defendants' Response to Plaintiff's Statement of Proposed Undisputed Facts (doc. 25-2). To the extent the parties did not explicitly agree on any statement of fact, the Court cites to the portion of the record providing support for the statement.

established schedules for and trained all non-kitchen employees. Brown made hiring decisions "in conjunction with Jean Robert." (de Cavel Dep. 19:20-20:8; Brown Dep. 53:354:1) Brown testified that he "was not responsible for any decision that involved spending money." (Brown Dep. 51:19-20.) Even so, both de Cavel and Brown himself considered Brown a part of the restaurant's management team. (de Cavel Dep. 50:13-14; Brown Dep. 59:17-22.)

As maître d', Brown was offered a guaranteed compensation of $75,000 per year, equating to no less than $2884.80 in gross earnings per pay period. (Brown Aff. ¶ 2.) Under Brown's compensation agreement, Brown's compensation was derived, at least in part, by the restaurant's tip pool. If Brown's share of the tip pool did not equal his guaranteed compensation, the restaurant would pay him the difference.

### C. The Restaurant's Tip Pooling Arrangement

Under the restaurant's tip pooling arrangement, servers were required to contribute an amount equal to seventeen percent of their gross sales for each shift into a tip pool. (Blevins Aff. ¶ 3.) Each eligible employee would receive a portion of the total. Servers received one share, Brown, as maître d', and the sommelier each received one share, and the bussers received one half of a share. (*Id.*)

### D. Wade Closes Pigall's

In early January 2009, Wade decided to permanently close Pigall's at the end of that month. He did not consult with de Cavel when making this decision. Additionally, Wade notified Brown that his compensation would be lowered from $75,000 to $45,000 per year and de Cavel that his compensation would be lowered from $100,000 to $80,000 per year for the final month of the restaurant's operation.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

**III.  ANALYSIS**

The FLSA requires employers to pay their employees a minimum wage for all work hours worked. 29 U.S.C. § 206(a)(1). Notwithstanding the minimum wage requirement, employers may pay less than the minimum wage to employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m). To qualify for this "tip credit," an employer must demonstrate that (1) the employee was notified of the tip pooling arrangement; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*

**A.  Wade as an "Employer"**

Before addressing the restaurant's tip pooling arrangement, the Court first must consider whether Wade, in his individual capacity, had the status of an "employer" under the FLSA when the alleged violations occurred. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). In deciding whether a party is an employer under the Act, the "economic reality" of the employment relationship controls, rather than formalistic labels or common law concepts of agency. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (internal quotes and citations omitted). While "no one factor is dispositive" in determining whether an individual defendant is an "employer" under the FLSA, courts typically focus upon the degree of an individual's "operational control of significant aspects of the corporation's day to day functions ... and who personally made decisions" regarding the corporation's direction. *Elliot Travel & Tours*, 942 F.2d at 965 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st

Cir.1983)).  Additionally, courts have considered financial control over a corporation a significant factor in determining whether an individual is an "employer" under the Act.. *See id.*

In *Dole v. Elliott Travel & Tours, Inc*, the individual at issue was the president and co-owner of the corporation and was found to have been "involved in the business operations of the corporation," "controlled the purse strings of the corporation," and determined the amount of employee salaries.  *Id*. at 966.  He was held to be an employer for purposes of the FLSA, and therefore jointly and severally liable with the corporate employer for violations of the FLSA.  Likewise in *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir.1994), the individual whom plaintiffs sought to hold jointly and severally liable with the corporate employer had a significant ownership interest in the company, was CEO of the company, controlled significant functions thereof, determined salaries and made hiring decisions.  The court held that the district court had erred in determining that this individual was not personally liable for the judgment against the company for FLSA violations.  *Id*.  Furthermore, in *Donovan v. Agnew*, the court determined that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA.  *Agnew*, 712 F.2d  at 1514.

Turning to the facts of the present case, Defendants argue that Wade did not have sufficient control over the day-to-day operations of the restaurant to be held individually liable as an "employer" under the Act.  Citing only to Wade's affidavit, Defendants argue that Wade "exercised no operational control over the restaurant's operation"and that "[o]ne hundred percent of the day-to-day operations of [the restaurant] rested with de Cavel."  (Doc. 25 at 2-3.)  Further,

Defendants claim that de Cavel, not Wade, made all determinations with respect to hiring and firing and employee compensation. (*Id*.) As Defendants briefed, "The name of the restaurant was Jean-Robert at Pigall's, de Cavel's name was on the door, and de Cavel made virtually all the decisions." (*Id.* at 2.)

The record reveals that Wade held an eighty percent ownership interest in DCHW and bankrolled "the entire operation" by providing 100 percent of the restaurant's financing. (Wade Dep. 12, 20-21.) Wade prepared the restaurant's annual tax returns and took a tip credit against the restaurant's federal tax liability. (Wade Dep. 11, 35.) Wade periodically stopped by the restaurant, sometimes several times per week. (Wade Dep. 18-19, 59.) Wade testified that he and de Cavel made joint decisions on matters such as changing carpet cleaning services for the restaurant. (*Id*. at 59.) Further, as Defendants acknowledge, Wade received daily sales records and monthly financial statements from the restaurant, met with de Cavel monthly to discuss "operations and financial statements," and made suggestions "from time-to-time about how the operation of [the restaurant] could run more effectively or profitably." (*Id*.)

With respect to employee compensation, the record reveals that Wade set de Cavel's salary and that Wade and de Cavel established Brown's compensation. (*Id*. at 30-31, 53-54.) When asked what authority he had to establish de Cavel's salary, Wade testified, "I wrote the checks." (*Id*. at 64.) Furthermore, in January of 2009, Wade unilaterally decided to close the restaurant at the end of the month and to reduce both de Cavel's and Brown's compensation in the interim. (de Cavel Dep. 39-40; Brown Dep. Ex. 2; Wade Dep. 63-64.) In a letter dated January 2, 2009, Wade wrote the following to de Cavel:

> Effective immediately, your salary will be $80,000.... Richard
> Brown's guaranteed salary will now be $40,000 and he will share in
> the tip pool.

(Brown Dep. Ex. 2.) When asked what authority he had to take such drastic measures Wade testified,

> The fact that I was writing all of the checks, the fact that I was
> funding the operation, the fact that I was the one speaking to the
> banks and putting money into it.... It was the golden rule authority.

(Wade Dep. 65.)

Given Wade's ownership interest in the restaurant, involvement in the restaurant's finances, control over de Cavel's and Brown's salaries, and his professed "golden rule authority," the Court finds that there is no genuine issue as to whether Wade was an employer for purposes of the FLSA. The record demonstrates that he was. Thus, Plaintiffs' motion for partial summary judgment requesting a finding that Wade was an employer under the FLSA is GRANTED.

### B. Defendants' Liability Under the FLSA

Having determined that Wade, in addition to DCHW, was an employer under the FLSA, the Court next considers whether Pigall's tip pooling arrangement violates the Act. Plaintiff acknowledges that he participated in a tip pool, but he contends that it was invalid and that he is therefore owed damages. According to Plaintiff, Defendants were not entitled to pay the tip credit wage because they (1) unlawfully participated in the tip pool by using a portion of the tip pool to offset their salary obligation to Brown and (2) allowed Brown, a manager, to participate in the tip pool. (Doc. 22.)

#### 1. Offsetting Brown's Compensation with a Share from the Tip Pool

8

Plaintiff first argues that the restaurant's tip-pooling arrangement violates the FLSA as a matter of law because Defendants' use of the tip pool to offset Brown's salary resulted in an illegal kick-back to the restaurant. (*Id.*) The Department of Labor requires that the minimum wage be "paid finally and unconditionally or 'free and clear'" and forbids any "'kick-back' directly or indirectly to the employer or to another person for the employer's benefit." 29 C.F.R. § 531.35. The regulation provides an example of a prohibited kickback: an employer who requires an employee to buy tools for his job when the purchase cuts into the worker's minimum wage or overtime pay. *Id*.

Here, Plaintiff argues that Pigall's used the tip pooling arrangement to subsidize Brown's wages, resulting in an indirect kickback to the restaurant. As maître d', Brown was entitled to $2884.80 in guaranteed compensation every two weeks. (Brown Aff. ¶ 2.) To satisfy its compensation agreement with Brown, the restaurant allocated one share of the tip pool from each shift to Brown, then the restaurant paid Brown "whatever was necessary to get him to his guaranteed minimum." (Wade Decl. ¶ 7.) The parties do not dispute these facts. Plaintiff contends that this arrangement violates the FLSA's regulations requiring that employees' wages be paid "free and clear" of kick-backs to employers.

In support of his argument, Plaintiff cites to *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048(GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007). In *Chan*, the owners of a New York restaurant failed to comply with section 203(m)'s requirement that all tips be provided to employees with positions that "customarily and regularly" receive tips where the restaurant (1) used part of the tip pool to offset the hourly pay of part-time workers and (2) retained for itself a

9

significant portion of the tip pool. 2007 WL 313483 at *17. Code of Federal Regulations § 531.35, the "free and clear" regulation, was not at issue in *Chan*.

Citing to *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010), Defendants argue that the validity of Pigall's tip pooling arrangement must be analyzed under section 203(m), not the free and clear regulation. (Doc. 25, at 9.) In *Cumbie*, the plaintiff was required to participate in a tip pool that included kitchen staff. Cumbie first argued that because the restaurant's tip pool included employees who are not "customarily and regularly tipped employees," as defined in section 203(m), it was invalid under the FLSA. 596 F.3d at 581. The court determined that because the restaurant did not claim a tip credit, it was not required to comply with section 203(m). *Id*.

Cumbie further argued that the tip pooling arrangement violated the "free and clear" regulation because her forced participation in the tip pool was an indirect kick-back to the kitchen staff for the restaurant's benefit. *Id*. at 582. The applicability of the free and clear regulation to a tip pool arrangement, the court stated, hinged on "whether or not the tips belong to the server to whom they are given." *Id*. Citing *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942), the court noted the default rule that tips belong to their recipient only "in the absence of an explicit contrary understanding," i.e., a tip pooling arrangement. *Id*. at 578. And, where such an arrangement is made, "in the absence of statutory interference, no reason is perceived for its invalidity." *Id*., citing *Williams*, 315 U.S. at 397. Thus, if a valid tip pooling arrangement is in place, servers own only the tips redistributed to them from the tip pool. *Id.* at 582. If a restaurant takes a tip credit, the tip pool is valid if it complies with section 203(m). *Id*. Since the restaurant in *Cumbie* did not take a tip credit, it was not required to comply with section 203(m). *Id*. at 581.

Thus, the tip pool was valid even though it included non-customarily tipped employees. *Id.* at 582. Because the tip pool was valid, Cumbie owned only the tips redistributed to her from the tip pool and could not claim that her contribution to the tip pool constituted an illegal kick back under the free and clear regulation. *Id.*

Defendants argue that, similar to the *Cumbie* plaintiff, the applicability of the free and clear regulation hinges on whether or not the tips at issue belonged to Plaintiff. (Doc. 25.) And, according to *Williams* and *Cumbie*, Plaintiff only owned the full amount of his tips if Pigall's tip pooling arrangement is invalid under section 203(m). Furthermore, Defendant argues, even if this Court determines that the tip pooling arrangement is invalid, the free and clear regulation "is only breached if a 'kick-back' to an employer reduces the employee's hourly wages to below the minimum standard." *See Platek v. Duquesne Club*, 961 F. Supp. 835, 838 (W.D. Pa 1995); *Cumbie*, 596 F.3d at 581-82. As Defendants correctly point out, Plaintiff has produced no evidence that his wages fell below the minimum wage.

The Court agrees with Defendants that the validity of the tip pooling arrangement must first be addressed under section 203(m), not the free and clear regulation. Yet even if the Court were to find that the tip pooling arrangement failed to comply with section 203(m), the Court would be unable to grant Plaintiff summary judgment without evidence that Plaintiff's wages fell below the minimum wage.

### 2. Management Participation in the Tip Pool

The FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v.*

*New Silver Place Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002); *Wajcman v. Investment Corp. of Palm Beach*, No. 07-80912-CIV, 2008 WL 783741, *3 (S.D. Fla. March 20, 2008) ("The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves"). Where employers participate in a tip pool, the pool is invalid. *See Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998) (tip pool violated FLSA where general manager, who had authority to suspend, hire and fire employees and analyze payroll costs, was allowed to participate in the pool).

Plaintiff argues that Pigall's tip pool was invalid because Brown was a manager and shared in the pool. (Doc. 22-1.) In support of its argument, Plaintiff points to Brown's guaranteed compensation, his participation in the opening of the restaurant, his authority to train, schedule and supervise the wait staff, and his authority to hire and fire employees. (*Id.*) Plaintiff cites to the depositions of Brown and de Cavel, wherein both men testified that Brown was considered part of the restaurant's management team. (de Cavel Dep. 50:13-14; Brown Dep. 59:17-22.) These facts, Plaintiff argues, unequivocally establish that Brown was an employer for purposes of the FLSA. *See Ayres*, 12 F. Supp. 2d at 307-08 (general manager of restaurant, who had full authority to suspend or terminate employees, supervised wait staff, made hiring decisions, assumed responsibility for budget and received weekly salary of $2000 was not an employee who "customarily and regularly received tips" under the FLSA).

Defendants agree that Brown participated in the tip pool but argue that he was not a manager and, thus, the tip pool was not invalid by virtue of the fact that Brown participated in it. Defendants point to *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1990), to

12

support their contention that Brown cannot be considered an employer under the Act. In *Continental Cuisine*, the individual in question was the maître d' of the restaurant alleged to have violated the FLSA. 751 F. Supp. at 802-03. The maître d' was responsible for setting up the dining room, seating and greeting customers, serving the first drink to customers, scheduling shifts for the wait staff, interviewing applicants for positions as waiters and waitresses, and recommending that persons be hired or fired. *Id*. at 800. Because the maître d' did not have final authority to hire and fire employees, set wages, control restaurant operations, or control payroll, he was not considered an employer for purposes of the FLSA. *Id*. at 803. Defendants argue that, similar to the maître d' in *Continental Cuisine*, Brown did not have the requisite managerial authority to be considered an employer under the Act.

The Court agrees with Defendants that there is a genuine issue of material fact as to whether Brown is an employer under the FLSA. Although the parties appear to agree on many of the duties that Brown performs, there is conflicting testimony regarding whether Brown had full authority to hire and fire workers and how much control Brown exercised at the restaurant. For example, although Brown testified that he made final hiring decisions, he acknowledged that he was "not at liberty to hire someone" without de Cavel first meeting with that person. (Brown dep. 53:3-54:15.) Meanwhile, de Cavel testified that Brown was part of his management team and "fire[d] a few people without [his] agreement" (de Cavel dep. 50:13-14; 20:9-10). Conversely, Brown testified that he had no responsibility "for any decision that involved spending money." (Brown dep. 51:19-20.) Based on the current record, and construing all facts in favor of Defendants, the Court believes that genuine issues of material fact preclude summary judgment

13

on this issue. Plaintiff's motion for summary judgment regarding the validity of the restaurant's tip pool is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for partial summary judgment requesting a finding that Wade was an employer under the FLSA and DENIES Plaintiff's motion for partial summary judgment as to the remaining issues.

IT IS SO ORDERED.

                                                      s/Susan J. Dlott
                                            Chief Judge Susan J. Dlott
                                            United States District Court